UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN

JAMES HERMES d/b/a MOE'S ROE,

        Plaintiff,

-vs-

NORDIC GROUP, INC.,

        Defendant.

Hon. Timothy P. Greeley
United States Magistrate Judge

Case No. 2:15-CV-00168-GJQ-TPG

---

Terry F. Burkhart (P30282)
BURKHART, LEWANDOWSKI & MILLER, P.C.
Attorney for Plaintiff
816 Ludington Street
Escanaba, MI  49829
Phone: 906-786-4422

John W. Inhulsen (P69137)
Rachael M. Roseman (P78917)
SMITH HAUGHEY RICE & ROEGGE
Attorneys for Defendant
100 Monroe Center NW
Grand Rapids, MI  49503-2802
Phone: 616-774-8000

## JOINT STATUS REPORT

      A Rule 16 Scheduling Conference is scheduled for December 21, 2015, at 10:00 o'clock a.m. (E.S.T.), before the Hon. Timothy P. Greeley, United States Magistrate Judge. Appearing for the parties as counsel will be Terry F. Burkhart, of the law firm of Burkhart, Lewandowski & Miller, P.C., attorney for Plaintiff, and John W. Inhulsen and Rachael M. Roseman of the law firm of Smith Haughey Rice & Roegge, Attorneys for Defendant.

1.   Jurisdiction:  The basis for the court's jurisdiction is diversity of Citizenship.  The amount in controversy is more than $75,000.00.  Jurisdiction in this Court is not disputed.

2.   Jury or Non-Jury:  This case is to be tried before a jury.

3.   Judicial Availability:  The parties do not agree to have a United States Magistrate Judge conduct any and all further proceedings in the case, including trial, and to order the entry of final judgment.

4.   Geographic Transfer:  The parties are advised of the possibility, pursuant to W.D. Mich. LCivR 3.3(h), of a transfer of the action to a judge located in a different city, on the basis of the convenience of counsel, the parties, or witnesses. Reassignment of the action shall be at the discretion of the court and shall require the consent of all parties and of both the transferor and transferee judge. The parties shall advise whether a transfer for geographic convenience is warranted in this case.  Defendant has indicated its intention to move to transfer this case to the Western District, Southern Division.

*James Hermes d/b/a Moe's Roe Nordic Group, Inc.*
Case No. 2:15-CV-00168-GJQ-TPG

5. <u>Statement of the Case</u>:

<u>Plaintiff's Statement of the Case</u>

In 2012, the Plaintiff sold a substantial amount of fish roe products to Defendant.  Subsequent correspondence between the parties make clear that Defendant does not contest that it ordered and received such goods, nor is there any dispute over the balance due, except as set forth in the following paragraph.

Defendant claims a substantial offset of $129,176.16 relative to fish roe processing services it purchased from Defendant in 2010.

Defendant asserts that the product purchased in 2010 was partially defective.  However, Plaintiff did not own or purchase the fish roe to be processed.  Upon information and belief, the fish roe which was processed was owned by Defendant or its affiliated entity, Superior Fish Guys ("SFG").  Upon information and belief, SFG is an entity which has common shareholders, employees and officers with Defendant.

In any event, when the fish roe provided by others was received, Plaintiff contacted the Defendant and indicated that the roe to be processed smelled like sweet potatoes, was obviously of question value and utility, and requesting further direction from the Nordic Group/SFG representatives.  Plaintiff, with more than 30 years in the fish and roe business, will testify that the roe was very old freezer stock.  Nordic Group/SFG representatives traveled to the Plaintiffs Garden Michigan processing facility, inspected the herring roe to be processed and agreed the quality of the roe was very questionable.  An SFG representative took video tape of the product in its pre-processing condition.  However, they advised Plaintiff that the product in question could be salvaged by mixing it with large amounts of other roe, and that they had a contact in Europe who would be able to do just that.  Based on an express directive from Defendant's representatives, the herring roe in question was processed and shipped, pursuant to a purchase order number coming directly from Nordic Group, Inc.

Subsequently, Plaintiff was advised that the contact who was supposed to remix the herring roe had rejected the shipment as unsuitable. Because he valued the Nordic Group, Inc business, Plaintiff gratuitously offered a $20,000 deduction to his price.   That offer was accepted and applied to the purchase price of the 2010 herring processing.   Not until the 2012 order was received and filled did Defendant assert any setoff from Plaintiff relative to the 2010 herring roe processing.

To the extent the Plaintiff is required to defend itself relative to the 2010 shipment, Plaintiff claims a number of affirmative defenses based primarily on the Uniform Commercial Code concerning the sale of goods and several common law defenses arising out of the facts set forth above such as waiver, estoppel, failure to timely reject the goods, release, and failure to mitigate damages, based on Plaintiffs offer to replace the roe.  When that offer was made, the herring roe market had continued in collapse, and the replacement offer was refused—even though a Company representative agreed in writing that the cost of replacement would be far less than the amount of the claimed set-off.

Plaintiff never assumed any market risk relative to the price of herring roe.  As a matter of law and undisputed fact, Defendant bore that risk.  Upon information and belief, the Defendant's contact in Europe filed bankruptcy and lost his license to process fish products, roe products, or both during

-2-

*James Hermes d/b/a Moe's Roe Nordic Group, Inc.*
Case No. 2:15-CV-00168-GJQ-TPG

the relevant time period in question.   One principal focus of discovery will be on the relationships between this contact and Defendant.

### Defendant's Statement of the Case

Beginning in or around 2010, the Plaintiff began processing roe products to be sold to Nordic Group.  Moe's Roe then shipped the processed roe to Defendant Nordic Group in Boston, Massachusetts.  Once Nordic Group receives processed roe, it is stored and shipped to its customers over the following months.

In 2010, Plaintiff improperly processed roe by failing to freeze the roe adequately.  This improperly frozen roe was shipped to one of Nordic Group's customers in Sweden.  In May 2011, Nordic Group's customer discovered that the roe was improperly frozen and unusable.  Nordic Group's customer immediately notified Defendant of the problem, and Nordic Group quickly placed Plaintiff on notice both verbally and via email.

The damaged roe had been purchased by Nordic Group's customer for $150,000.  Nordic Group's customer requested a full refund for the purchase price, which Nordic Group provided.

Nordic Group began trying to contact Defendant about the improperly processed roe.  After several failed attempts, Plaintiff finally agreed to send associates to Sweden to inspect the bad roe—all at Defendant's cost.  Plaintiff's associates verified the damages and amounts of improperly frozen roe.  Accordingly, Plaintiff agreed to repay Nordic Group for the losses sustained by providing Nordic Group with free product.  In an effort to reduce the financial impact on Plaintiff's business, Nordic Group agreed to accept half of the free product in 2012 and half in 2013.

Despite the parties' ongoing relationship, Plaintiff refused to make good on its promise to reimburse Nordic Group for the losses sustained.  Given that no resolution had been made by March 2014, Nordic Group rightfully set off $129,176.16 from the September 27, 2013 invoice.  The amount set off was the amount Nordic Group paid Plaintiff for the bad roe—not the full amount to which Nordic Group was entitled, namely the full settlement paid to Nordic Group's Swedish customer as a direct result of Plaintiff's improper processing of the roe.

Defendant further disputes the allegations in Plaintiff's second count related to the October 20, 2013 invoice.  Plaintiff contacted Nordic Group, asking whether Nordic Group would be willing to store whitefish roe, which it classified as 2013 roe, until a buyer could be located.  The market for whitefish roe was nonexistent, so Nordic Group agreed to store the roe on the condition that it was not obligated to purchase the roe unless a buyer could be identified.  In the meantime, Plaintiff agreed to continue looking for a buyer for the roe.

As a matter of form, Plaintiff prepared an invoice with a price based on one that Nordic Group had previously paid for 2013 roe.  While Nordic Group was storing the roe, Plaintiff came to it requesting an advance as Plaintiff was experiencing financial difficulties.  Nordic Group agreed to provide the advance, using the stored roe as security.

Thereafter, Nordic Group learned that the roe was not 2013 roe, but was actually 2012 roe, which is near impossible to sell.  Accordingly, Nordic Group requested Plaintiff take possession of the roe that had been misrepresented to be 2013 roe.  Plaintiff has refused, and Nordic Group has incurred and continues to incur costs associated with storage and freight.

*James Hermes d/b/a Moe's Roe Nordic Group, Inc.*
Case No. 2:15-CV-00168-GJQ-TPG

6. <u>Pendent State Claims</u>: N/A.

7. <u>Joinder of Parties and Amendment of Pleadings</u>: The parties expect to file all motions for joinder of parties to this action and to file all motions to amend the pleadings by **February 1, 2016**, subject to possible further amendment based on information discovered during the course of discovery.

8. <u>Disclosures and Exchanges</u>:

   (i) Fed.R. Civ.P. 26(a)(1) requires initial disclosures, including any lay witness identification, unless the court orders otherwise. Any party objecting to Rule 26(a)(1) disclosures must set forth below in detail the nature and reasons for the objection. If one or more party objects, no initial disclosure shall be required until the court resolves the objection at the Rule 16 conference. In the absence of an objection, initial disclosures will be required of all parties. (Set forth below a proposed schedule for initial disclosures.)

   (ii) The plaintiff expects to be able to furnish the names of the plaintiff's known lay witnesses to the defendant by **February 1, 2016**. The Defendant expects to be able to furnish the names of the Defendant's known lay witnesses to the Plaintiff by **March 1, 2016**.

   (iii) The Plaintiff expects to be able to furnish the names of Plaintiff's expert witness by **April 1, 2016**. Defendant expects to be able to furnish the names of defendant's expert witnesses by **April 1, 2016**.

   (iv) It would not be advisable in this case to exchange written expert witness reports as contemplated by Fed.R.Civ.P. 26(a)(2). Reports, if required, should be exchanged according to the following schedule: (Set forth the proposed schedule for exchange of expert witness reports.)

   (v) The parties are not able to agree on voluntary production at this time

9. <u>Discovery</u>:

   As required by Fed.R.Civ.P. 26(f), set forth proposed plan of discovery, including subjects on which discovery may be needed and whether discovery should be conducted in phases or be limited to or focused on certain issues. Also set forth any recommendations as to limitations on discovery. Limitations may include the number of depositions, interrogatories and requests for admissions, or limitations on the scope of discovery pending resolution of dispositive motions or alternative dispute resolution proceedings. State whether the presumptive time limits for depositions (one day of seven hours) should be modified in this case. Fed. R. Civ. P. 30(d)(1))

BURKHART, LEWANDOWSKI & MILLER, P.C. 816 LUDINGTON STREET, ESCANABA, MICHIGAN 49829-3890 (906) 786-4422

*James Hermes d/b/a Moe's Roe Nordic Group, Inc.*
Case No. 2:15-CV-00168-GJQ-TPG

___

The Plaintiff proposes the following discovery plan

Plaintiff expects there will initially be a concentrated effort by both parties to acquire electronic and documentary evidence during the first 90 days of discovery.

Following that, several depositions and written interrogatories may be required.

In addition, Plaintiff will submit voluminous requests to admit that will hopefully streamline the issues.

The Defendant proposes the following discovery plan

Defendant has put plaintiff on notice to retain all electronically discoverable evidence. Defendant expects the parties to engage in efforts to collect and acquire electronic and documentary evidence within the first 90 days of discovery. Defendant also intends to send interrogatories, requests for production, and requests to admit within the first 90 days.

Defendant further expects multiple depositions of fact witnesses within the permitted discovery period.

The parties believe that all discovery proceedings can be completed by **August 1, 2016.**

10. Disclosure or Discovery of Electronically Stored Information: The parties have agreed that all relevant electronically stored information shall be provided to opposing counsel on terms to be mutually agreed to.

11. Assertion of Claims of Privilege or Work-Product Immunity After Production: The parties have agreed that in the event any privileged or work product protected items are inadvertently produced, counsel for those documents shall be promptly returned to opposing counsel, unless either party files a Motion for Protective Order relating to such items.

12. Motions: The parties acknowledge that W.D. Mich. LCivR 7.1(d) requires the moving party to ascertain whether any motion will be opposed.

    All motions shall affirmatively state the efforts of the moving party to comply with the obligation created by Rule 7.1(d).

    The parties anticipate that all dispositive motions will be filed by **October 1, 2016.**

13. Alternative Dispute Resolution: The parties jointly agree that this matter shall be submitted to voluntary facilitative mediation. Unless otherwise expressly agreed between the parties, facilitative mediation shall take place after the close of discovery.

14. Length of Trial: Counsel estimate the trial will last approximately **three (3)** days total, allocated as follows: **1½ days** for plaintiff(s)' case, **1½ days** for defendant(s)'s case.

15. Prospects of Settlement: Settlement negotiations have not commenced.

*James Hermes d/b/a Moe's Roe Nordic Group, Inc.*
Case No. 2:15-CV-00168-GJQ-TPG

---

16. <u>Electronic Document Filing System</u>: Counsel are reminded that Local Civil Rule 5.7(a) now requires that attorneys file and serve all documents electronically, by means of the Court's CM/ECF system, unless the attorney has been specifically exempted by the Court for cause or a particular document is not eligible for electronic filing under the rule. The Court expects all counsel to abide by the requirements of this rule. *Pro se* parties (litigants representing themselves without the assistance of a lawyer) must submit their documents to the Clerk on paper, in a form complying with the requirements of the local rules. Counsel opposing a *pro se* party must **file** documents electronically but **serve** *pro se* parties with paper documents in the traditional manner.

17. <u>Other</u>:  N/A

18. <u>In ERISA denial of benefits cases</u>:  N/A

                                        BURKHART, LEWANDOWSKI & MILLER, P.C.
                                        Attorneys for Plaintiff

Dated: December 17, 2015          By:       /s/ Terry F. Burkhart

                                        SMITH HAUGHEY RICE & ROEGGE
                                        Attorneys for Defendant

Dated: December 17, 2015          By:       /s/ John W. Inhulsen

G:\DJM\2014135 JOINT STATUS REPORT 12-17-15.DOC-12/17/15

BURKHART, LEWANDOWSKI & MILLER, P.C.  816 LUDINGTON STREET, ESCANABA, MICHIGAN 49829-3890 (906) 786-4422